UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRYAN CHADWICK WILKINS,
Plaintiff,

v. Case No.:

DEPUTY RAYMOND ALVAREZ, individually and in his official capacity as a Deputy Sheriff of the Hillsborough County Sheriff's Office,
Defendant.
________________________________________/

**COMPLAINT**

Plaintiff, BRYAN CHADWICK WILKINS ("Plaintiff" or "Wilkins"), by and through undersigned counsel, brings this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202 against Defendant DEPUTY RAYMOND ALVAREZ ("Defendant" or "Alvarez"), individually and in his official capacity as a Deputy Sheriff of the Hillsborough County Sheriff's Office, and alleges as follows:

**INTRODUCTION**

On April 8, 2026, Hillsborough County Deputy Raymond Alvarez arrested Plaintiff Bryan Wilkins, a journalist and constitutional activist, under Florida's "HALO" law, Fla. Stat. § 843.31, while Wilkins was livestreaming and commenting on a police investigation. Wilkins challenges § 843.31 both facially and as applied. The First Amendment protects public scrutiny of police conduct, and the Fourth Amendment requires probable cause to believe an actual offense has occurred. Alvarez violated both guarantees by arresting Wilkins for protected speech and newsgathering without probable cause.

## JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States.
2. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for violations of rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.
3. This Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331.
4. This Court further has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4).
5. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.
6. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because the acts and omissions giving rise to Plaintiff's claims occurred in Hillsborough County, Florida.
7. The Tampa Division is the appropriate division because the events giving rise to this action occurred in Tampa, Hillsborough County, Florida.

## PARTIES

8. Plaintiff BRYAN CHADWICK WILKINS is a Florida resident.
9. Plaintiff is a full-time journalist and member of the media.
10. Plaintiff regularly engages in journalism and newsgathering activities, including observing, documenting, recording, commenting upon, and livestreaming law-enforcement activity occurring in public.
11. Defendant RAYMOND ALVAREZ was, at all times material to this Complaint, a Deputy Sheriff employed by the Hillsborough County Sheriff's Office ("HCSO").
12. HCSO records identify Alvarez as Officer No. 261317.

13. Alvarez is identified as the affiant associated with HCSO Criminal Report Affidavit No. HS26009968 and Agency Report No. 26-0357519 arising from Plaintiff's April 8, 2026 arrest.
14. At all times material, Alvarez acted under color of state law and pursuant to authority conferred upon him as an HCSO deputy.
15. Alvarez is sued in his individual capacity for his personal participation in the constitutional violations alleged herein.
16. Alvarez is additionally sued in his official capacity as a Deputy Sheriff of the Hillsborough County Sheriff's Office.

## FACTUAL ALLEGATIONS

17. On April 8, 2026, Plaintiff was engaged in journalistic newsgathering at or near 2501 East Fowler Avenue, Tampa, Florida 33612.
18. Plaintiff encountered HCSO deputies conducting a law-enforcement investigation.
19. Plaintiff began observing and recording the deputies.
20. Plaintiff's purpose was to document and report upon law-enforcement activity occurring in public.
21. Plaintiff used his cellphone to livestream the encounter over the Internet.
22. Through that livestream, Plaintiff was contemporaneously disseminating information concerning the conduct of government officials to members of the public.

23. Plaintiff's livestream itself therefore constituted public commentary and citizen speech concerning a matter of public interest, in addition to serving Plaintiff's journalistic newsgathering function.
24. Plaintiff did not approach or remain near the investigation for the purpose of interfering with law enforcement.
25. Plaintiff did not threaten any deputy with physical harm.
26. Plaintiff did not intend to harass any deputy.
27. Plaintiff did not intend to impede or interfere with any deputy's performance of a lawful duty.
28. Plaintiff's purpose was to observe, document, record, livestream, report upon, and publicly communicate information concerning law-enforcement activity.
29. At approximately 10:37 p.m., Alvarez observed Plaintiff near an unmarked agency-issued patrol vehicle with emergency lights activated.
30. Alvarez's own sworn arrest affidavit expressly acknowledges that Plaintiff "was observed recording deputies during the investigation."
31. According to Alvarez's affidavit, five deputies were present.
32. Alvarez asserted that Plaintiff's presence hindered the deputies' ability to continue the investigation because of "officer safety concerns."
33. Alvarez's affidavit, however, identifies no physical act by Plaintiff obstructing a deputy.
34. The affidavit does not allege that Plaintiff touched a deputy.
35. It does not allege that Plaintiff threatened a deputy with physical harm.
36. It does not allege that Plaintiff entered or contaminated an evidence scene.

37. It does not allege that Plaintiff touched, concealed, destroyed, or manipulated evidence.
38. It does not allege that Plaintiff blocked a deputy's movement.
39. It does not allege that Plaintiff physically interfered with the detention, questioning, search, or arrest of another person.
40. It does not identify any particular investigative act that Plaintiff physically prevented a deputy from performing.
41. Alvarez was wearing an HCSO Street Crimes Unit tactical uniform consisting of a green top bearing the agency logo, green trousers, and a black tactical vest bearing the word "SHERIFF."
42. Alvarez gave Plaintiff repeated verbal commands to move twenty-five feet back.
43. Plaintiff remained present for the purpose of documenting and publicly communicating information concerning the law-enforcement activity.
44. Alvarez continued issuing commands while walking toward Plaintiff.
45. According to Alvarez's own sworn account, Alvarez continued walking toward Plaintiff until Alvarez himself was approximately one foot from Plaintiff.
46. Plaintiff then began moving backward.
47. Alvarez continued ordering Plaintiff to move twenty-five feet back.
48. Plaintiff continued moving backward until he stopped.
49. Alvarez issued another verbal command requiring Plaintiff to move farther backward.

50. Alvarez states that Plaintiff did not comply with that additional command.

51. Alvarez then walked back toward the unmarked patrol vehicle.

52. Alvarez thereafter turned around and began counting the distance between Plaintiff and what Alvarez characterized as the "investigation scene."

53. Alvarez counted twenty-one feet.

54. Alvarez then placed Plaintiff under arrest for allegedly impeding a law-enforcement investigation.

55. HCSO records reflect an offense time of approximately 10:37 p.m. and an arrest time of approximately 10:38 p.m.

**FLORIDA'S HALO LAW**

56. Plaintiff was arrested pursuant to Fla. Stat. § 843.31, titled "Approaching a first responder with specified intent after a warning."

57. Section 843.31 does not criminalize merely being within twenty-five feet of an investigation scene.

58. The statute provides that, after receiving the statutorily required warning, a person must knowingly and willfully violate the warning and approach or remain within twenty-five feet of the first responder with the intent to:

a. impede or interfere with the first responder's ability to perform a legal duty;

b. threaten the first responder with physical harm; or

c. harass the first responder.

59. The statutory distance is measured from the first responder—not from an undefined "investigation scene."

60. The statute defines “harass” as willfully engaging in a course of conduct directed at a first responder that intentionally causes substantial emotional distress in the first responder and serves no legitimate purpose.
61. Plaintiff possessed none of the prohibited intents required by § 843.31.
62. Plaintiff's presence served the legitimate purposes of journalism, newsgathering, public commentary, observation of government officials, and dissemination of information concerning a matter of public interest.
63. Plaintiff did not threaten physical harm.
64. Plaintiff did not intend to harass the deputies.
65. Plaintiff did not intend to impede or interfere with the deputies' lawful duties.
66. Plaintiff's observation, commentary, recording, livestreaming, and journalism did not establish any prohibited intent.
67. Alvarez's probable-cause narrative instead focuses principally upon Plaintiff's recording activity, physical proximity, and response to Alvarez's commands.
68. Alvarez's statement that Plaintiff was twenty-one feet from the “investigation scene” does not, standing alone, establish that Plaintiff was within twenty-five feet of a particular first responder at the legally relevant time.
69. Even assuming Plaintiff was within twenty-five feet of a first responder at a legally relevant time, proximity alone did not establish a violation.
70. Probable cause additionally required facts supporting an objectively reasonable inference that Plaintiff knowingly and willfully violated a qualifying warning while possessing one of the three prohibited intents specified by § 843.31.

71. Plaintiff alleges that the circumstances known to Alvarez did not objectively establish such intent.

72. Plaintiff further alleges that Alvarez himself affirmatively changed the physical distance between himself and Plaintiff by walking toward Plaintiff until Alvarez was approximately one foot away.

73. Plaintiff responded to that approach by moving backward.

74. Protected recording, journalism, public commentary, and livestreaming could not constitutionally substitute for evidence of the criminal intent required by § 843.31.

75. Florida is not the first state in which legislation establishing a physical buffer between citizens and law-enforcement officers has generated substantial First Amendment concerns.

76. Federal courts have enjoined enforcement of police-buffer laws in Arizona, Indiana, and Louisiana following constitutional challenges to restrictions affecting citizens' ability to observe and record law enforcement.

77. In *Arizona Broadcasters Association v. Brnovich*, No. 2:22-cv-01431 (D. Ariz.), a federal district court preliminarily enjoined enforcement of Arizona legislation restricting the recording of law-enforcement activity within eight feet.

78. In *Reporters Committee for Freedom of the Press v. Rokita*, the Seventh Circuit affirmed preliminary injunctive relief against enforcement of Indiana's twenty-five-foot police-buffer statute in the challenge before it, including based upon vagueness concerns.

79. A federal court likewise preliminarily enjoined Louisiana's twenty-five-foot police-buffer law in *Deep South Today v. Murrill*, 779 F. Supp. 3d 782 (M.D. La. 2025), No. 3:24-cv-00623, in litigation challenging the statute under the First Amendment.

80. Although those statutes are not identical to Fla. Stat. § 843.31, the constitutional challenges to analogous police-buffer laws demonstrate the serious First Amendment concerns created when criminal statutes restrict the ability of journalists and citizens to observe, record, livestream, and publicly comment upon law-enforcement activity.

## SEIZURE OF PLAINTIFF'S CELLPHONE

81. Following Plaintiff's arrest, law enforcement seized Plaintiff's cellphone.

82. The cellphone was the device Plaintiff had been using to livestream the deputies' conduct.

83. The seizure terminated Plaintiff's ability to continue broadcasting the encounter through that device.

84. Plaintiff's livestream had been transmitted over the Internet.

85. Plaintiff's cellphone was not contraband.

86. Plaintiff alleges that the livestream itself had been transmitted to the Internet and that the physical device did not need to be indefinitely retained merely to preserve the broadcast.

87. Plaintiff's cellphone has never been returned.

88. Plaintiff has subsequently been informed that HCSO cannot locate the cellphone.

89. Plaintiff alleges Alvarez's personal liability for the seizure of the cellphone only to the extent the evidence establishes that Alvarez personally seized the device, directed its seizure, or otherwise participated in the decision to seize it.
90. Plaintiff does not presently allege that Alvarez personally caused the subsequent loss of the cellphone absent evidence establishing his involvement in its later custody, retention, or disappearance.
91. The disappearance of the cellphone is nevertheless part of the factual aftermath of Plaintiff's arrest and the damages he suffered following the challenged enforcement action.

## CRIMINAL PROCEEDINGS

92. Plaintiff was subsequently prosecuted in the County Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.
93. The State charged Plaintiff with violating Fla. Stat. § 843.31.
94. Plaintiff appeared for arraignment.
95. The State maintained that probable cause supported the prosecution.
96. Plaintiff thereafter filed multiple motions challenging the prosecution.
97. The State subsequently entered a nolle prosequi.
98. The criminal prosecution therefore terminated without a conviction.
99. Plaintiff has suffered loss of liberty, interference with his journalism, newsgathering and speech, deprivation of property, emotional distress, humiliation, inconvenience, financial loss, and other damages as a direct and proximate result of the conduct alleged herein.

**FIRST AMENDMENT RIGHTS — PUBLIC COMMENTARY, NEWSGATHERING, RECORDING, AND LIVESTREAMING**

100. The First Amendment protects not merely the eventual publication of information but also constitutionally protected activities associated with gathering and communicating information concerning government conduct.

101. Plaintiff was engaged in multiple overlapping forms of First Amendment activity on April 8, 2026.

102. Plaintiff was observing government officials performing public duties.

103. Plaintiff was gathering news concerning law-enforcement activity.

104. Plaintiff was recording that activity.

105. Plaintiff was livestreaming the encounter to members of the public.

106. Plaintiff was thereby engaging in contemporaneous public commentary and citizen speech concerning government conduct.

107. Plaintiff's livestream was not merely the passive possession or operation of a cellphone near police.

108. The livestream itself was expressive activity through which Plaintiff contemporaneously transmitted information concerning the exercise of governmental authority to an Internet audience.

109. The subject of Plaintiff's livestream—law-enforcement officers performing public duties—was a matter of public interest.

110. Plaintiff's status as a journalist reinforces the newsgathering character of his conduct, but his constitutional right to observe and record government conduct did not depend upon his professional status.

111. In *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000), the Eleventh Circuit recognized a First Amendment right, subject to reasonable time, place, and manner restrictions, to photograph or videotape police conduct.

112. *Smith* recognized that the First Amendment protects gathering information concerning what public officials do on public property and specifically protects recording matters of public interest.

113. Plaintiff's livestream went beyond gathering information for later publication because Plaintiff was simultaneously gathering and disseminating information to the public while the encounter occurred.

114. The Supreme Court has separately recognized substantial First Amendment protection for verbal criticism and challenge directed toward police officers. *City of Houston v. Hill*, 482 U.S. 451, 461–63 (1987).

115. Accordingly, Plaintiff's observation, public commentary, recording, livestreaming, reporting, and newsgathering implicated First Amendment protections.

**<u>FOURTH AMENDMENT RIGHTS</u>**

116. The Fourth Amendment protects persons against unreasonable governmental seizures.

117. A warrantless arrest must be supported by probable cause.

118. Probable cause must exist as to an actual criminal offense.

119. Because § 843.31 requires both the conduct specified by the statute and one of three prohibited intents, physical proximity alone did not establish probable cause.

120. The Fourth Amendment also protects Plaintiff's personal property against unreasonable governmental seizure.

121. Plaintiff's cellphone constituted an "effect" protected by the Fourth Amendment.

## COUNT I
## FIRST AMENDMENT — RETALIATION FOR PUBLIC COMMENTARY, NEWSGATHERING, RECORDING, AND LIVESTREAMING
## 42 U.S.C. § 1983
## Against Deputy Raymond Alvarez in His Individual Capacity

122. Plaintiff realleges paragraphs 1 through 115 as though fully set forth herein.

123. Plaintiff engaged in constitutionally protected activity by observing, documenting, recording, livestreaming, reporting upon, and engaging in public commentary concerning law-enforcement officers performing governmental duties in public.

124. Plaintiff was engaged in journalistic newsgathering concerning a matter of public interest.

125. Plaintiff was simultaneously engaged in citizen speech.

126. Plaintiff's livestream itself constituted expressive activity because Plaintiff was contemporaneously transmitting information concerning government conduct to members of the public over the Internet.

127. Plaintiff therefore was not merely recording information for possible later use. He was actively communicating and publishing information to the public while the encounter occurred.

128. Alvarez knew Plaintiff was engaged in recording activity.

129. Alvarez's own sworn arrest affidavit expressly acknowledges that Plaintiff was recording deputies during the investigation.

130. Rather than identify physical interference by Plaintiff, Alvarez's probable-cause narrative specifically identifies Plaintiff's recording activity and physical proximity.

131. Alvarez repeatedly ordered Plaintiff farther away from the governmental activity Plaintiff was documenting and broadcasting.

132. Alvarez then affirmatively advanced toward Plaintiff while continuing to demand that Plaintiff move farther away.

133. According to Alvarez's own sworn account, Alvarez continued advancing until he was approximately one foot from Plaintiff.

134. Plaintiff then moved backward.

135. Alvarez continued demanding that Plaintiff move farther away.

136. Alvarez thereafter returned toward the investigation and purported to measure Plaintiff as twenty-one feet from what Alvarez characterized as the investigation scene.

137. Alvarez then arrested Plaintiff.

138. The chronology alleged herein supports a causal connection between Plaintiff's protected activity and the adverse governmental action.

139. Alvarez knew Plaintiff was recording police.

140. Plaintiff continued attempting to observe, document, and publicly communicate the police activity.

141. Alvarez repeatedly sought to increase the physical separation between Plaintiff and the governmental activity Plaintiff was broadcasting.

142. Alvarez ultimately terminated Plaintiff's ability to continue that activity by arresting him.

143. Law enforcement thereafter seized the cellphone Plaintiff had been using to livestream the encounter.

144. Arrest and detention constitute adverse governmental actions capable of deterring a person of ordinary firmness from continuing protected First Amendment activity.

145. Plaintiff alleges that his public commentary, recording, livestreaming, journalism, and newsgathering were substantial or motivating factors in Alvarez's actions toward him.

146. Plaintiff further alleges that Alvarez lacked probable cause to arrest him under Fla. Stat. § 843.31.

147. Section 843.31 did not criminalize Plaintiff's presence merely because Alvarez considered Plaintiff too close to the investigation.

148. The statute required that Plaintiff knowingly and willfully violate the qualifying warning and approach or remain within twenty-five feet of the first responder while possessing one of three specified prohibited intents.

149. Plaintiff possessed none of those prohibited intents.

150. Plaintiff's intent was to observe, document, livestream, comment upon, and report law-enforcement activity.

151. Alvarez's affidavit identifies no threat of physical harm by Plaintiff.

152. It identifies no physical contact with a deputy.

153. It identifies no evidence Plaintiff entered or contaminated an evidence scene.

154. It identifies no evidence Plaintiff blocked a deputy's movement.

155. It identifies no evidence Plaintiff physically prevented questioning, detention, searching, arrest, evidence collection, or another identifiable law-enforcement function.

156. The conduct relied upon to justify Plaintiff's arrest instead consisted principally of Plaintiff's proximity, continued presence, recording activity, and response to Alvarez's commands.

157. Plaintiff alleges those circumstances did not provide probable cause to believe he possessed one of § 843.31's required prohibited intents.

158. In *Nieves v. Bartlett*, 587 U.S. 391 (2019), the Supreme Court held, subject to a narrow exception, that a plaintiff asserting retaliatory arrest ordinarily must establish the absence of probable cause.

159. Plaintiff expressly alleges the absence of probable cause here.

160. Plaintiff further alleges that the circumstances known to Alvarez did not objectively provide arguable probable cause because they did not reasonably establish the specific criminal intent required by § 843.31.

161. Protected public commentary, journalism, recording, and livestreaming could not themselves supply the missing criminal intent.

162. Plaintiff's arrest terminated his ongoing protected activity and imposed a governmental penalty upon his exercise of First Amendment rights.

163. Alvarez acted under color of state law.

164. As a direct and proximate result of Alvarez's conduct, Plaintiff suffered loss of liberty, interference with his journalism and speech, termination of his livestream, emotional distress, humiliation, inconvenience, financial loss, and other damages.

**WHEREFORE,** Plaintiff requests judgment against Deputy Raymond Alvarez in his individual capacity; compensatory damages; nominal damages; punitive damages to the extent permitted by law; reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and such other relief as the Court deems just and proper.

## COUNT II
## FOURTH AMENDMENT — UNLAWFUL ARREST AND UNREASONABLE SEIZURE
## 42 U.S.C. § 1983
## Against Deputy Raymond Alvarez in His Individual Capacity

165. Plaintiff realleges paragraphs 1 through 115 as though fully set forth herein.

166. Alvarez intentionally caused Plaintiff to be seized and placed under arrest.

167. Plaintiff's arrest was warrantless.

168. A warrantless arrest requires probable cause.

169. The arrest was purportedly based upon Fla. Stat. § 843.31.

170. Section 843.31 required more than Plaintiff's physical proximity to a law-enforcement investigation.

171. The statute required a qualifying warning, a knowing and willful violation of that warning, approach or presence within twenty-five feet of the first responder, and one of the three specified prohibited intents.

172. Alvarez's affidavit states that he measured Plaintiff as twenty-one feet from what Alvarez characterized as the "investigation scene."

173. Section 843.31, however, measures the statutory distance from the first responder.

174. The allegation that Plaintiff was twenty-one feet from an "investigation scene," standing alone, therefore did not establish the statutory distance element.

175. Even assuming Plaintiff was within twenty-five feet of a first responder at the legally relevant time, distance alone did not establish the offense.

176. Probable cause additionally required objectively reasonable grounds to believe Plaintiff knowingly and willfully violated the qualifying warning while possessing one of § 843.31's three prohibited intents.

177. Plaintiff possessed none of those intents.

178. Plaintiff was present for the legitimate purposes of journalism, public commentary, newsgathering, and dissemination of information concerning government conduct.

179. Plaintiff did not threaten physical harm.

180. Plaintiff did not intend to harass a deputy.

181. Plaintiff did not intend to impede or interfere with the performance of a legal duty.

182. Alvarez's affidavit identifies no physical conduct by Plaintiff objectively establishing such an intent.

183. Alvarez himself walked toward Plaintiff until he was approximately one foot away.

184. Plaintiff responded by moving backward.

185. Plaintiff did not physically block any deputy's movement.

186. Plaintiff did not physically prevent any identifiable investigative task.

187. Plaintiff did not enter or interfere with an evidence scene.

188. Plaintiff did not threaten violence.

189. Recording and livestreaming police did not themselves establish criminal intent.

190. Remaining present for the purpose of documenting police activity did not itself establish criminal intent.

191. Plaintiff alleges that Alvarez therefore lacked probable cause and arguable probable cause to arrest him under § 843.31.

192. Plaintiff's arrest constituted an unreasonable seizure in violation of the Fourth Amendment.

193. Following the arrest, law enforcement additionally seized Plaintiff's cellphone.

194. Plaintiff had been using the cellphone to livestream police activity.

195. Plaintiff's cellphone was not contraband.

196. Plaintiff alleges Alvarez is individually responsible for the initial seizure only to the extent the evidence establishes that Alvarez personally seized the device, directed its seizure, or otherwise participated in the decision to seize it.

197. Plaintiff does not presently attribute HCSO's later retention, loss, or inability to locate the cellphone personally to Alvarez absent evidence establishing Alvarez's involvement in the subsequent custody of the device.

198. To the extent Alvarez personally caused or directed the initial seizure without lawful justification, that seizure constituted an additional unreasonable seizure under the Fourth Amendment.

199. Alvarez acted under color of state law.

200. As a direct and proximate result, Plaintiff suffered loss of liberty and other compensable constitutional injuries.

**WHEREFORE,** Plaintiff requests judgment against Deputy Raymond Alvarez in his individual capacity; compensatory damages; nominal damages; punitive damages to the extent permitted by law; reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and all further relief the Court deems just and proper.

## COUNT III
## FACIAL CHALLENGE TO FLA. STAT. § 843.31 — FIRST AMENDMENT OVERBREADTH
## FIRST AND FOURTEENTH AMENDMENTS

**42 U.S.C. § 1983 AND 28 U.S.C. §§ 2201–2202**
**Against Deputy Raymond Alvarez in His Official Capacity**

201. Plaintiff realleges paragraphs 1 through 115 as though fully set forth herein.

202. Plaintiff challenges Fla. Stat. § 843.31 as facially unconstitutional under the First and Fourteenth Amendments.

203. Plaintiff acknowledges that the State possesses legitimate interests in protecting first responders from actual threats of physical harm and deliberate conduct that genuinely impedes or interferes with their lawful duties.

204. Section 843.31 therefore has applications involving conduct that the government may constitutionally regulate.

205. Plaintiff's facial challenge does not depend upon the proposition that every conceivable application of § 843.31 is unconstitutional.

206. Rather, Plaintiff alleges that a substantial number of the statute's applications burden constitutionally protected expression when judged in relation to its plainly legitimate sweep.

207. The statute applies not only to threats or physical obstruction but to remaining within twenty-five feet with an intent to "impede or interfere" or "harass."

208. Section 843.31 defines "harass" as willfully engaging in a course of conduct directed at a first responder that intentionally causes substantial emotional distress and serves no legitimate purpose.

209. These provisions operate in circumstances where journalists, protesters, observers, and ordinary citizens routinely engage in protected expression directed toward or concerning first responders.

210. Such expression includes observing, questioning, criticizing, photographing, recording, livestreaming, protesting, reporting upon, and publicly commenting upon police activity.

211. A journalist's recording may distract an officer.

212. A citizen's questioning may interrupt an officer.

213. A protester's criticism may anger or emotionally distress an officer.

214. A camera may make an officer uncomfortable.

215. A journalist or citizen may remain near police activity because that person considers continued observation necessary to document government conduct.

216. These consequences do not, standing alone, remove the underlying speech or expressive activity from First Amendment protection.

217. Yet § 843.31 places persons engaged in such protected activity at risk of criminal arrest based upon determinations concerning whether their activity constitutes interference or harassment.

218. The statute's definition of “harass” is particularly problematic when applied to expressive activity because it expressly incorporates whether the citizen's conduct causes “substantial emotional distress” and “serves no legitimate purpose.”

219. Those concepts permit enforcement decisions involving speech to turn upon judgments concerning the emotional impact, necessity, value, and legitimacy of expression directed toward public officials.

220. The First Amendment does not permit protected criticism, journalism, recording, or public commentary to become criminal merely because the expression is unwelcome, distracting, irritating, critical, or emotionally distressing.

221. Nor should a person engaged in protected expression be forced to depend upon the subject of that expression determining that the person's expressive purpose is sufficiently legitimate.

222. Section 843.31 consequently creates a substantial risk that protected expression will be chilled.

223. A journalist, observer, protester, or citizen confronted with a twenty-five-foot warning must choose between abandoning protected activity and risking arrest based upon an officer's subsequent characterization of the person's intent.

224. The risk is particularly significant where police activity is concerned because law-enforcement officers exercise extraordinary governmental authority, including powers to detain, search, arrest, and use force.

225. Public observation, recording, commentary, journalism, and livestreaming provide information through which citizens may scrutinize the exercise of those powers.

226. In *Smith v. City of Cumming*, the Eleventh Circuit recognized the First Amendment right, subject to reasonable time, place, and manner restrictions, to record police conduct.

227. In *City of Houston v. Hill*, the Supreme Court emphasized the First Amendment protection afforded to criticism and challenge directed toward police.

228. The Supreme Court has further instructed that a First Amendment facial challenge requires consideration of the law's full range of applications and whether a substantial number of those applications are unconstitutional in relation to the statute's plainly legitimate sweep. *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024).

229. Plaintiff acknowledges the legitimate sweep of § 843.31 insofar as it reaches actual threats of physical harm and intentional conduct genuinely obstructing first responders.

230. Plaintiff alleges, however, that the statute additionally reaches a substantial range of protected expressive activity involving observation, recording, public commentary, protest, criticism, journalism, and newsgathering.

231. The constitutional problem is not merely hypothetical.

232. Plaintiff himself was arrested while recording and livestreaming police activity even though Alvarez's probable-cause narrative identifies no threat, physical obstruction, physical contact, interference with evidence, or identifiable investigative act physically prevented by Plaintiff.

233. Plaintiff alleges that the statute's application to protected expressive conduct is substantial when compared with its legitimate applications and that the statute therefore is facially overbroad under the First Amendment.

**WHEREFORE,** Plaintiff requests declaratory judgment that Fla. Stat. § 843.31 is facially unconstitutional under the First and Fourteenth Amendments; such prospective relief as Plaintiff establishes standing and entitlement to receive; reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and all further relief the Court deems just and proper.

## COUNT IV
## AS-APPLIED CHALLENGE TO FLA. STAT. § 843.31
## FIRST AND FOURTEENTH AMENDMENTS
## 42 U.S.C. § 1983 AND 28 U.S.C. §§ 2201–2202
## Against Deputy Raymond Alvarez in His Individual and Official Capacities

234. Plaintiff realleges paragraphs 1 through 115 as though fully set forth herein.

235. Independently of Plaintiff's facial challenge, Fla. Stat. § 843.31 was unconstitutional as applied to Plaintiff's protected journalistic and expressive activities.

236. Plaintiff was present for the purposes of observing, recording, livestreaming, publicly commenting upon, and reporting on law-enforcement activity.

237. Plaintiff was engaged in journalistic newsgathering concerning government officials performing public duties.

238. Plaintiff was simultaneously engaged in citizen speech by contemporaneously broadcasting information concerning those officials over the Internet.

239. Plaintiff was not present for the purpose of impeding or interfering with law enforcement.

240. Plaintiff did not threaten Alvarez or another deputy with physical harm.

241. Plaintiff did not intend to harass Alvarez or another first responder.

242. Plaintiff's presence served legitimate purposes protected by the First Amendment.

243. Alvarez knew Plaintiff was recording deputies.

244. Alvarez's own sworn arrest affidavit expressly states that Plaintiff was observed recording deputies during the investigation.

245. Alvarez nevertheless invoked § 843.31 against Plaintiff and repeatedly ordered him farther away.

246. Alvarez then walked toward Plaintiff while continuing to demand increased separation.

247. According to Alvarez's own sworn narrative, Alvarez continued advancing until he was approximately one foot from Plaintiff.

248. Plaintiff then moved backward.

249. Alvarez continued issuing commands requiring Plaintiff to move farther backward.

250. Alvarez subsequently returned toward the unmarked patrol vehicle and counted Plaintiff's distance from what Alvarez characterized as the "investigation scene."

251. Alvarez counted twenty-one feet.

252. Alvarez then arrested Plaintiff pursuant to § 843.31.

253. Section 843.31 does not criminalize being twenty-one feet from an "investigation scene."

254. It requires, among other elements, approach or presence within twenty-five feet of the first responder and one of the specified prohibited intents.

255. Plaintiff possessed no such prohibited intent.

256. Plaintiff's recording, livestreaming, public commentary, and newsgathering were protected First Amendment activities.

257. Plaintiff's journalistic and expressive purposes constituted legitimate purposes for his presence.

258. Alvarez's affidavit identifies no threat of physical harm by Plaintiff.

259. It identifies no physical contact between Plaintiff and a deputy.

260. It identifies no attempt to enter or interfere with an evidence scene.

261. It identifies no attempt to touch, conceal, destroy, or manipulate evidence.

262. It identifies no physical interference with the detention, questioning, search, or arrest of another person.

263. It identifies no investigative act that Plaintiff physically prevented a deputy from performing.

264. Instead, Alvarez's own narrative establishes that Plaintiff was recording police, that Alvarez approached Plaintiff, that Plaintiff moved backward, and that Alvarez thereafter arrested Plaintiff after measuring his distance from what Alvarez described as the investigation scene.

265. The First Amendment does not permit Florida to transform protected recording, public commentary, livestreaming, journalism, or newsgathering into criminal interference merely because an officer considers the speaker too close to government activity.

266. Nor may protected expression itself substitute for proof of the specific criminal intent required by § 843.31.

267. As applied to Plaintiff, § 843.31 operated as a direct restriction upon his ability to observe, record, livestream, publicly comment upon, and report government activity.

268. Enforcement resulted in Plaintiff's arrest and loss of liberty.

269. The arrest terminated Plaintiff's ongoing livestream.

270. Law enforcement additionally seized the cellphone through which Plaintiff had been broadcasting the encounter.

271. The application of § 843.31 therefore directly burdened Plaintiff's exercise of First Amendment rights.

272. Under the particular facts alleged herein, application of § 843.31 to Plaintiff's public commentary, citizen speech, recording, livestreaming, and journalistic newsgathering was unconstitutional.

273. The State's subsequent entry of a nolle prosequi terminated the criminal prosecution but did not remedy the constitutional injury caused by enforcement of the statute against Plaintiff.

274. Plaintiff is therefore entitled to a declaration that Fla. Stat. § 843.31 was unconstitutional as applied to his protected activity and to all other relief available under law.

**WHEREFORE,** Plaintiff requests judgment declaring Fla. Stat. § 843.31 unconstitutional as applied to Plaintiff; compensatory and nominal damages to the extent permitted by law; punitive damages against Alvarez in his individual capacity to the extent permitted by law; reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff BRYAN CHADWICK WILKINS respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Declare that Defendant's retaliation against and interference with Plaintiff's public commentary, citizen speech, recording, livestreaming, journalism, and newsgathering violated the First Amendment;

C. Declare that Plaintiff's arrest without probable cause violated the Fourth Amendment;

D. Award relief for any unconstitutional seizure of Plaintiff's cellphone for which Alvarez is shown to have been personally responsible;

E. Declare Fla. Stat. § 843.31 facially unconstitutional under the First and Fourteenth Amendments;

F. Declare Fla. Stat. § 843.31 unconstitutional as applied to Plaintiff's protected public commentary, recording, livestreaming, journalism, and newsgathering;

G. Enter such prospective relief concerning unconstitutional enforcement of Fla. Stat. § 843.31 as Plaintiff establishes standing and entitlement to receive;

H. Award Plaintiff compensatory damages in an amount to be determined by the jury;

I. Award Plaintiff nominal damages for violations of his constitutional rights;

J. Award punitive damages against Deputy Alvarez in his individual capacity to the extent permitted by law;

K. Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

L. Award pre-judgment and post-judgment interest as permitted by law; and

M. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
SABATINI LAW FIRM, P.A.
1601 E. 1ST AVENUE
MOUNT DORA, FL 32757
T: (352)-455-2928
anthony@sabatinilegal.com

*/s/ Gavin B. Rollins*
GAVIN B. ROLLINS, ESQ.
FL BAR No. 1064417
gavin@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st AVENUE
MOUNT DORA, FL 32757
T: (352)-328-4892

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished this 29th day of September 2026, via email to all parties of record.

*/s/ Anthony F. Sabatini*